FILED
SUPERIOR COURT
OF GUAM

2024 APR -2 PM 8: 07

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | ) CRIMINAL CASE NO. **CF0334-23-01** |
| | ) GPD REPORT NO. 23-10760 |
| | ) |
| vs. | ) |
| | ) |
| | ) **DECISION AND ORDER RE.** |
| THERESA MARIE AFLLEJE BLAS, | ) **DEFENDANT'S MOTION TO** |
| DOB: 07/08/1971 | ) **DISQUALIFY A PROSECUTOR** |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## I. INTRODUCTION

This matter is before the Honorable Maria T. Cenzon on Defendant's Motion to Disqualify a Prosecutor (the "Motion"). Oral arguments on the Motion were heard on January 3, 2024. Counsel Tom Fisher appeared on behalf of Defendant Theresa Marie Aflleje Blas ("Defendant" or "Defendant Blas"). Special Assistant Attorney General Joseph McDonald with the Office of the Attorney General ("McDonald" or "SAAG McDonald") was present on behalf the People of Guam. Following the hearing on the Motion, the Court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001, CVR 7.l(e)(6)(A) and CR1.1 of the Local Rules of the Superior Court of Guam. Having duly considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order **GRANTING** the Defendant's Motion.

## II. BACKGROUND AND RELEVANT FACTS

On May 19, 2023, Defendant Theresa Aflleje Blas was charged via Indictment with having "intentionally introduced or attempt[ing] to introduce major contraband" into the Department of Corrections detention facility in violation of 9 GCA §§ 58.60(a)(2)(a), (c)(1) or (a)(1) and (b)(1), and charged with: (1) PROMOTING MAJOR PRISON CONTRABAND (As a 2nd Degree Felony); and (2) PROMOTING PRISON CONTRABAND (As a Misdemeanor). Indictment (May 19, 2023).[1]

Several hearings were held in this case at which the People were represented by different Assistant Attorneys General (AAG), including AAG Kristine Borja, AAG Charles Kinnunen, AAG Leah Diaz-Aguon, AAG Matthew Shuck, and AAG Ed Han, during the period of May 11, 2023, to September 6, 2023.

### A. McDonald Enters his Appearance as SAAG.

On October 17, 2023, a Notice of Filing of Chief Deputy Attorney General's Designation of Special Assistant Attorney General for Trial and Related Proceedings (the "Notice") was filed by the McDonald Law Office, LLC *jointly* with the Office of the Attorney General signed by JOSEPH B. McDONALD OF MCDONALD LAW OFFICE, LLC, and by the OFFICE OF THE ATTORNEY GENERAL by Joseph A. Guthrie, Chief Deputy Attorney General. The Notice states:

//

//

---

[1] Blas was originally charged together with Defendant Victoria Benita Cabrera Agulto; however, on January 10, 2024, Defendant Agulto was severed from Defendant Blas in this case and the matters continue as CF0334-23 (Defendant Agulto) and CF0334-23-01 (Defendant Blas), respectively. *Order Severing Defs.*, Jan. 10, 2024.

## CHIEF DEPUTY ATTORNEY GENERAL DESIGNATION OF SPECIAL ASSISTANT ATTORNEY GENERAL FOR TRIAL AND RELATED PROCEEDINGS

The undersigned Chief Deputy Attorney General having designated Special Assistant Attorney General Joseph B. McDonald as prosecuting attorney for trial and related proceedings in CF334-23, acknowledges and affirms this entry of appearance as co-counsel of record for Plaintiff PEOPLE OF GUAM.

Concurrently with the Notice, McDonald filed his Entry of Appearance as a Special Assistant Attorney General (SAAG) with the Office of the Attorney General "for purposes of trial and related proceedings and the instant matter" and further sought service of "all papers, notices, and orders filed or related to the instant case be also served upon the McDonald Law Office...." *Entry of Appearance* (Oct. 17, 2023).

**B. Defendant seeks Disqualification of SAAG McDonald due to conflict.**

During the Pre-Trial Conference held on October 17, 2023, the Defendant, through counsel, orally requested that McDonald recuse himself due to an "incurable conflict of interest." *Pre-trial Conf. Hrg.* at 11:17:15AM (Oct. 17, 2023). However, the Court ordered that the request be submitted in writing as consistent with the Criminal Procedure statutes and rules regarding Motions, which are all too often ignored in the criminal docket.[2]

The Defendant subsequently filed the Motion on November 3, 2023, arguing that McDonald should be precluded from serving as both a prosecutor in this case and a criminal defense attorney in other cases brought by the Office of the Attorney General on behalf of the People of Guam. *Mot.* at p. 5, Nov. 3, 2023. The gravamen of his complaint is that such dual

---

Agulto waived her right to speedy trial and has been deemed legally eligible for Adult Drug Court participation. She does not join in the Motion to Disqualify. *Id.* at p. 2.

[2] *See,* 8 GCA § 65.15 (Motions Which Must be Made Prior to Trial); 8 GCA §1.25(c); Local Rules of the Superior Court of Guam, Criminal Procedure Rules CR 1.1 (CR1.1(b)(1)("An application to the court for an order *shall be by motion.*" (emphasis added)).

roles cannot be reconciled in a criminal case because a prosecutor in a criminal case owes a duty of loyalty to the state while a defense attorney owes the same duty to his client in a criminal case; therefore, the same individual cannot serve two masters because to do so would violate or significantly risk violating the Rules of Professional Conduct. *Mot.* at pp. 3-5 (citing *Barrett-Anderson v. Camacho,* 2018 Guam 20 ¶¶ 17-20).

In his Response, McDonald argues that he has implemented a "compliance program" to ensure there is no conflict of interest, obtained waivers from existing clients in criminal cases, sought to be relieved as counsel in a case in which he was appointed indigent counsel, and that his appointment is a very limited, "narrow engagement" for the purpose of taking the matter to trial. Moreover, he asserts that other jurisdictions permit such dual roles and that in this case no conflicts exist.

### III. DISCUSSION

#### A. The Proper Test for Attorney Disqualification under the Guam Rules of Professional Conduct.

The Guam Supreme Court has declared that "[t]he proper test for attorney disqualification in Guam is whether an attorney's continued representation or participation in a matter violates or significantly risks violating the Guam Rules of Professional Conduct." *Barrett-Anderson v. Camacho,* 2018 Guam 20. Prior to *Barrett-Anderson* and the adoption of the 2003 Guam Rules of Professional Conduct, the standard in attorney disqualification was the "appearance of impropriety" measure articulated in *People v. Tennessen,* 2009 Guam 3. There, the Supreme Court disqualified the entire Attorney General's office in a criminal prosecution "when a personally-conflicted Attorney General breached a previously-imposed conflict wall." *Barrett-Anderson* at ¶ 16. Since *Tennessen,* Guam adopted the 2003 Guam Rules of Professional Conduct, thereby eliminating the "appearance of impropriety" standard in favor of

establishing one requiring a showing of a violation of or significant risk of violating the Rules of Professional Conduct before disqualifying the attorney.[3] It is, however, noteworthy that despite overruling *Tennessen,* the Guam Supreme Court declared that its decision therein is not inconsistent with *Barrett-Anderson* "as it is a disqualification case concerning personal conflicts in *criminal* cases." *Id.* (emphasis added).

It is important to note also that *Barrett-Anderson* is distinguishable on its facts from the instant case as it concerned whether disqualification of the OAG was proper in a civil matter when the OAG previously represented the same government entity client in a civil proceeding through an AAG who had since retired. *Barrett-Anderson* did not concern the disqualification of a private attorney from serving as a SAAG prosecutor in the same jurisdiction where he also concurrently represents criminal defendants against the People. Thus, while *Barrett-Anderson* dictates the standard by which this Court determines whether a conflict exists, it does not supply the analysis relevant in this case because the applicable Rule in determining the conflict in that case was Rule 1.9(c) of the Guam Rules of Professional Conduct, not Rule 1.7, which is implicated here.[4]

In any event, as dictated in *Barrett-Anderson,* we properly begin the analysis of Defendant's instant Motion with Rule 1.7 of the Guam Rules of Professional Conduct.

//

//

//

---

[3] *Barrett-Anderson* at ¶18 ("[W]e find that the "appearance of impropriety" standard ceased to be the standard for attorney disqualification after the 2003 adoption of the Guam Rules of Professional Conduct for criminal actions filed after the rules' effective date and for all subsequent attorney conduct in pending civil cases).

[4] *Barrett-Anderson* at ¶ 27 ("Now, we turn our attention to the singular rule that is implicated here – Rule 1.9(c). ...This is the only applicable rule because the present suit is a claim between the original lawyer – the Attorney General – and the former client – DRT.").

**B. Rule 1.7 of the Guam Rules of Professional Conduct requires Defendant to show that McDonald's SAAG appointment results in a "significant risk" of violating the Rules of Professional Conduct.**

Rule 1.7 of the Guam Rule of Professional Conduct (GRP) provides, as follows:

**Rule 1.7: Conflict of Interest: Current Clients.**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or
(2) *there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.*

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

Although Rule 1.7 is the starting point in this case, the question of attorney disqualification in a case where a private attorney who represents defendants in criminal cases is disqualified under Rule 1.7 of the Guam Rules of Professional Responsibility from also prosecuting criminal defendants under the SAAG designation is one of first impression. *Barrett-Anderson* involved the disqualification of the OAG in a civil matter. *Tennessen* involved the disqualification of the Office of the Attorney General in a criminal case concerning personal conflicts of interest involving then-Attorney General Douglas Moylan.

*Tennessen* at ¶ 6, fn. 2. The Court is not aware of any subsequent Guam Supreme Court case addressing attorney disqualification under Rule 1.7 since *Barrett-Anderson* and neither party has provided any Guam authority following *Barrett-Anderson* in the context of a criminal case.

Nevertheless, the parties agree that *Barrett-Anderson* requires a showing of more than "an appearance of impropriety" to justify the disqualification of McDonald as a SAAG in this case. *Mot. Hrg.* at 9:53:49 AM to 9:58:25 AM (Jan. 3, 2024). However, the Guam Supreme Court did not wholly reject a Court's consideration of the "appearance of impropriety" in considering attorney disqualification, but merely requires that before finding disqualification is warranted, the appearance of impropriety must be coupled with an additional showing "that the attorney's representation risks violating the Rules of Professional Conduct." *Barrett-Anderson* at ¶ 17 (quoting *Bergeron v. Mackler,* 623 A.2d 489, 493 (Conn. 1993)("Although *considering the appearance of impropriety may be part* of the inherent power of the court to regulate the conduct of attorneys, *it will not stand alone* to disqualify an attorney in the absence of any indication that the attorney's representation risks violating the Rules of Professional Conduct.")(emphasis added)).

Moreover, in determining whether "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer" under Rule 1.7, the "significant risk" does not allow for disqualification for a *potential conflict,* but for "inevitable and material conflicts." *Id.* (citing *Bottoms v. Stapleton,* 706 N.W.2d 411, 417 (Iowa 2005)). The challenge before this Court is how to measure "significant risk" in this context, given that there is no precedent on point. In considering the appropriate formula, the Court considers the

analysis invoked by the Iowa Supreme Court in *Bottoms,* which reasoning was adopted by the Guam Supreme Court in *Barrett-Anderson.*

Although *Bottoms,* like *Barrett-Anderson,* does not involve a criminal proceeding, the principles are articulated clearly therein and Iowa Rule of Professional Conduct 32:1.7 mirrors Guam's Rule 1.7 in all applicable respects.[5] Consequently, the Court finds its analysis in determining whether there exists a disqualifying conflict both persuasive and appropriate. The Iowa Supreme Court reasoned as follows:

> The question to be answered under rule 32:1.7(a)(2) is whether there is "a significant risk" that counsel's representation of one client "will be materially limited by [his or her] responsibilities to another client." See *id. r.* 32:1.7(a)(2). Although related to the old "appearance of impropriety" test, the modern approach focuses on the degree of risk that a lawyer will be unable to fulfill his or her duties to both clients. *See generally* 1 *The Law of Lawyering* § 10.4, at 10–12 to 10–13 (noting the old standard was "too vague and subjective" and was dropped from the ABA Model Rules of Professional Conduct).
>
> A comment to rule 32:1.7 sheds light on when a conflict of interest will materially limit an attorney in the performance of the attorney's responsibilities:
>
> > [A] conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend, or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's

---

[5] Iowa R. of Prof'l Conduct 32:1.7 mirrors Rule 1.7 of the Guam Rules of Professional Responsibility in all relevant aspects, and provides:

  (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

        (1) the representation of one client will be directly adverse to another client; or

        (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

  (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

        (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

        (2) the representation is not prohibited by law;

        (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

        (4) each affected client gives informed consent, confirmed in writing.

  (c) In no event shall a lawyer represent both parties in dissolution of marriage proceedings.

other responsibilities.... The mere possibility of subsequent harm does not itself require disclosure and consent. *The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.*

*Bottoms* at 416 (quoting Iowa R. of Prof'l Conduct 32:1.7 cmt. [8])(emphasis added).

In *Barrett-Anderson,* the Guam Supreme Court noted *Bottoms* as finding that the "concept of a *potential* conflict of interest is foreign to the new ethical rule."[6] The entire portion of the Iowa's court's discussion about *potential* conflict is important to consider, so it is replicated here:

> In considering this ruling [of the district court that "there is a significant potential for divergence of" the interests of the attorney's clients], we first note that the concept of a potential conflict of interest is foreign to the new ethical rule. That is because rule 32:1.7(a)(2) states that a conflict of interest *"exists* if ... there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." Iowa R. of Prof'l Conduct 32:1.7(a)(2) (emphasis added). In other words, if there is a significant risk that representation of one client will materially limit · the representation of another client, *a conflict of interest **actually exists**; **it is not merely potential**.* See 1 *The Law of Lawyering* § 10.4, at 10–13. Thus, only an actual conflict of interest, as defined in rule 32:1.7(a), will justify disqualification.

*Bottoms v. Stapleton,* 706 N.W.2d 411, 417 (Iowa 2005). The Court interprets this finding in *Bottoms* as standing for the proposition that the existence of a significant risk that the representation of one client will materially limit the representation of another client is *in and of itself* an *actual* – not potential – conflict of interest which requires disqualification.

We now examine whether McDonald's authority under his SAAG designation results in a significant risk that his dual representation as prosecutor and defense counsel will materially

---

[6] *Barrett-Anderson* at ¶17 (quoting *Bottom* at 417).

limit the representation of another client (his criminal defendant clients), therefore, resulting in a conflict under Rule 1.7 and mandating his disqualification.

### 1. McDonald's authority under his SAAG designation.

McDonald asserts that his representation is not materially limited by his responsibilities to another client, a former client or a third person, or by his personal interests. *Response* at p. 2 (citing Rule 1.7(a) of the GRPC)("None of the defendants or witnesses are clients or former clients of the Firm, nor does the undersigned have any responsibilities to another client, a former client or a third person, nor is there a personal interest of undersigned SAAG that would be materially limited by the engagement in this matter."). However, these are mere blanket assertions unaccompanied by Declarations or Affidavits made under penalty of perjury. Indeed, the statement that McDonald has no "responsibilities to another client...that would be materially limited by the engagement in this matter" is the precise question sought to be answered in this instant Motion. That is, whether McDonald's responsibilities to his current criminal defense clients would be materially limited by his responsibilities as a prosecutor under the SAAG designation, and vice versa.

While acknowledging a conflict of interest that is, "to some extent, recognized and sanctioned by the government[,]" SAAG McDonald indicated during the Motion Hearing that he has one court-appointed criminal defendant client and two clients who retained either him or another attorney within the McDonald Firm ("Firm"). *Mot. Hrg.* at 10:16:30 AM – 10:19:30 AM (Jan. 3, 2024). He claims that he has obtained waivers from these criminal defense clients but did not present any other information on the purported waivers in order to establish whether they are *knowing* waivers of conflict.

The Court's concern in this case is that McDonald's representation of criminal defendants concurrently with prosecuting individuals charged with a crime would result in a significant risk "that the representation of one or more clients will be materially limited by [his] responsibilities to another client," as proscribed by Rule 1.7. In this regard, the Court will apply the analysis from the *Bottoms* case: "The critical questions are the *likelihood that a difference in interests will eventuate* and, *if it does, whether it will materially interfere with the lawyer's independent professional judgment* in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." *Supra.*

### a. The likelihood that a difference of interests will eventuate.

The Court agrees with the Defendant that there is an appearance of impropriety when SAAG McDonald is acting as a prosecutor during one point in the day and a criminal defense attorney during another. *Mot. Hrg.* at 9:55:40 AM. However, an appearance of impropriety "will not stand alone to disqualify an attorney in the absence of any indication that the attorney's representation risks violating the Rules of Professional Conduct." *Barrett-Anderson* at ¶17 (quoting *Bergeron, supra*). Thus, McDonald's role as prosecutor pursuant to his SAAG designation will dictate whether a difference in interests will eventuate resulting in a violation or a significant risk of violating Rule 1.7.

According to McDonald, his role as a SAAG in the prosecution of this case and of two other matters is limited to a "consultant." *Mot. Hrg.* 10:26:25 AM – 10:27:00 AM. He relies on Guam Public Law No. 36-107, Chapter 7 Part I Section 4 as a basis for his SAAG authority:

> Notwithstanding any other provision of law for Fiscal Year 2023, the OAG in pursuit of the public interest is authorized to use up to 5% of its FY 2023 appropriation to procure *consultants*, experts and expert witnesses on a sole-source basis as necessary to pursue local and federal criminal cases and civil cases.

(emphasis added). A "consultant" is defined in the Merriam-Webster dictionary as "one who gives professional advice or services."[7] McDonald then argues that his consulting role is very well defined and was specifically crafted as a "narrow engagement" for the limited purpose of taking the matter to trial and other related proceedings. However, as he describes his role, it is far more expansive than a mere "consultant" in the general definition of the word. His responsibilities include the "authority to enter and make appearances, make legal decisions as the prosecutor at trial, file pleadings, and share[] certain ministerial and operational responsibilities between the Firm and the attorneys and staff in the Dept. of Law." *Response* at 4. "Primary attorney responsibility in this matter remains with the Attorney General, Chief Dep. Attorney, and the Chief Prosecutor," which McDonald describes to regard the "setting of terms of plea deals and the exercise of discretion on legal and strategic matters that are *appropriately at their respective levels, given the undersigned SAAG's experience as a prosecutor at trial." Id.* (emphasis added).

The Court is perplexed by McDonald's description of his "narrow engagement" as SAAG because it appears to encompass all of the same authority as a full-time Assistant Attorney General employed by the OAG.[8] Additionally, as the former Chief Prosecutor for the OAG, McDonald's use of the phrase "given the undersigned SAAG's experience as a prosecutor at trial" seems to downplay his own experience and undercuts the three previous pages of his Response detailing the "compliance program" through which he purportedly vets cases to determine and avoid conflicts of interests.

---

[7] https://www.merriam-webster.com/dictionary/consultant.
[8] The AAGs who appear before this Court have often indicated that plea agreements go through an approval process which includes review by the Attorney General and relevant hierarchy. Thus, the limitation offered here does not provide any distinction between McDonald's duties as a SAAG and those of a full-time AAG.

During the hearing of this matter, when queried about the tasks he is authorized to perform, McDonald's response was tentative and ambiguous and at times contradictory. In response to the Court's question about what he is responsible for in this case, he responded:

> McDONALD: It's only to conduct trial. It's only for discretion over legal calls at the time of trial. If I'm approached with an offer or request for a plea agreement, I do not exercise discretion on that. What I do is go to the Attorney General...excuse me... or, I go to one of the Deputies who has asked me to take the case and I say, "Hey, look. Now they're asking for a plea agreement," and so even that type of discretion *I have not asked for* because I'm continuing to narrow everything down.

> COURT: So, in terms of appointment as SAAG, and – correct me if I'm wrong – it sounds like this is a very limited appointment just for the purposes of trial. So, bringing the matter to trial; so, nothing pre-trial? You're saying that there's nothing, ... nothing in terms of pre-trial negotiations, in terms of appearing on behalf of the government in this case for violations, and then you're indicating as well that if defense counsel wanted to engage in negotiations for a resolution without trial, that's not you? That's someone else?

> How does that resolve the issue of a limited number of prosecutors by your appointment as Special Assistant Attorney General if your appointment is for the purposes of trial? A lot of the work gets done in the pre-trial stages, right? So, I guess my question is: how does that help with the burden on the limited number of prosecutors currently at the AG's office?

> McDONALD: Well, trial does take time. A trial like this I imagine is wrapped up within four to five days or fewer. And that time at trial, the other prosecutors are continuing to work up their files, their matters. So, it does free up those prosecutors that are doing other pre-trial matters. Now, again, ...

> COURT: *** What tasks is your office going to be undertaking? Are you going to be interviewing witnesses? What is your role specifically, or are you just appearing in court for the purpose of doing opening arguments and then questioning witnesses, are you doing...what kind of trial preparation up to that point are you going to be doing?

> McDONALD: Well, after reviewing the case, naturally, I would bring an investigator with me to question any of the witnesses. That investigator is a Office of the Attorney General investigator to question witnesses or to go after any other witness that they might think is relevant to the case.

It hasn't progressed to that stage yet. So, we don't know but **all I can say to the Court is as we progress towards trial, then we can look at the scope of engagement and see if it fits within the scope of engagement for this matter.** I'm not involved in any of the investigations. All I'm doing is taking the file that's given to me, working it up, making sure that the jury charging, the actual charging instrument, that the evidence is admissible and is relevant that I intend to elicit testimony on at trial. So, it's just narrowing it to the point where, when we do show up at trial, every contingency that I think is relevant to conducting the trial has been at least looked at and understood.

Now, as for the non-trial resolution, again, this is all just unfolding as we see. This is really only the second matter I've undertaken. **I can envision at some point in the future where I may say, and if the prosecutor in charge of this area or the, excuse me, Chief Prosecutor or Assistant Chief Prosecutor is comfortable, then maybe *I may ask for authority on non-trial resolution*** just to see if we can escape trial even if it's at the very last second.

*Mot. Hrg.* at 10:05:50 AM - 10:11:29 AM (emphasis added).

McDonald will be "working up the case," which means that he will be working with an OAG Investigator, he will question witnesses which will include police officers involved in the investigation, and, despite his earlier assurance that he will not be engaged in plea negotiations, at the hearing on the Motion he indicated that he may ask for authority to engage in plea negotiations.

Considering the extent of his involvement in this case and the expansion of responsibilities as may be dictated by the case progress, the Court finds that there is a strong likelihood that a difference of interests between his role as a prosecutor and his role as a criminal defense attorney will eventuate. Even if the OAG Investigator is not the same individual who may have been involved in the investigation of the cases in which McDonald serves as defense counsel, the extent of the engagement and working relationship between the OAG investigators and McDonald gives rise to a strong likelihood that he cannot separate his obligation as a prosecutor from his duties to his criminal client. McDonald has not indicated the

type of cases he currently represents criminal defendants. Are they similar to the charges in CF0334-23? If not, does it really matter that they are not the same types of offenses if the investigators are the same ones who would be investigating the cases on behalf of the OAG?[9]

More importantly, in his Response, it is clear that McDonald is passionate about serving as a prosecutor, which evidences the likelihood that the difference in interests will arise:

> From the foregoing, it should be clear to this Court that the undersigned SAAG (a) is not in violation of the rules of conduct, (b) is mindful of the obligations imposed by the rules of conduct, (c) is actively monitoring risk of a violation of the rules, and (d) stands ready to serve the People as a duly appointed, experienced, non-conflicted prosecutor whose engagement in this matter is carefully and narrowly tailed to serve the People's interest in bringing to justice those who violate criminal offenses of the territory and no more. The primary goal of this particular public interest is to bring to justice defendants introducing or attempting to introduce amphetamine-based substances and contraband items into the Adult Correctional Facility, Mangilao, Guam. The undersigned SAAG is duly appointed, prepared, and ready to serve the public interest.

*Response* at 5. Having read such an impassioned argument against disqualifying him from serving as a prosecutor in this matter, the Court is hard-pressed to now find that differences will not eventuate as a result of his service as a prosecutor.

The next question, however, is whether such difference of interest will materially interfere with SAAG McDonald's independent professional judgment.

//

//

//

---

[9] McDonald indicated that "on September 27, 2023," he was allowed to appear as a SAAG in CF0431-21 before Presiding Judge Alberto C. Lamorena III "after objection by the Alternate Public Defender and response by the undersigned SAAG. Soon thereafter, the CF0431-21 defendant pled guilty to charges that he beat his girlfriend so severely that the police smelled her blood first upon entering the dark, unlit residence of the victim." *Response* at 11. However, the Court cannot find any Entry of Appearance by McDonald in that case on September 27, 2023. In fact, the Judgment of Conviction in that case was entered since August 26, 2022. McDonald was not involved in CF0431-21.

**b. The eventual difference of interest will materially interfere with McDonald's independent professional judgment in considering alternatives or foreclose courses of action that should be reasonably pursued on behalf of his client.**

The Court finds that there is a significant risk that McDonald's engagement as a SAAG in this case will materially limit his responsibilities to his criminal defense clients. Although he stated that he obtained waivers from his current criminal defendant clients, he did not provide sufficient proof to the Court that the waivers were made by clients with the full knowledge of the extent of his participation in the prosecution of defendants charged with crimes on behalf of the People of Guam, as he passionately describes in his Response.

Of concern to the Court is the relationship that will be forged between the prosecution division staff when he prepares for trial in the prosecution of this instant case (as well as the others for which he has been designated SAAG). He will work closely with an OAG Investigator, with police officer witnesses, with victim witnesses all in service to the public interest. Will he be able to impeach the same police officer or investigator witnesses in the cases involving his clients? Are the same Chief and Deputy Chief Prosecutors going to evaluate the pleas involved in McDonald's criminal defendant client's cases? How will the conflict of interest be avoided when the same people who are responsible for employing and designating McDonald as SAAG are also the ones who have the final say in plea agreements involving his criminal defense clients? Who waives the conflict of interest when it is the People who could be affected by a decision made by SAAG McDonald? Based upon these concerns and the Response submitted which does not allay the Court's concerns, the Court finds that the second prong of the *Bottoms* query supports finding a substantial risk of a conflict of interest under Rule 1.7.

The Court next turns to Rule 1.7(b) which permits representation notwithstanding a conflict of interest if certain factors are satisfied.

### c. McDonald's dual representation does not pass Rule 1.7(b) requirements to permit continued representation in light of the conflict.

Rule 1.7(b) provides as follows:

Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) *the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client*;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) *each affected client gives informed consent, confirmed in writing.*

Even when a concurrent conflict of interest exists, a lawyer may represent a client if four elements under GRP 1.7(b) are met. The Court considers here 1.7(b)(1) and (4), as 1.7(b)(2) and (3) do not apply to prohibit continued representation. Under 1.7(b)(1), the lawyer must "reasonably" believe that they will be able to provide competent and diligent representation to each affected client. GRP 1.7(b)(1). As discussed at length, above, despite SAAG McDonald's belief that he can serve both as a prosecutor and a criminal defense attorney at the same time, the Court has found that such belief is not reasonable.

With respect to 1.7(b)(4), other than declaring that his criminal defense clients waived the conflict, McDonald did not provide evidence that each affected client gives informed consent, confirmed in writing as required under 1.7(b)(4). The extent of SAAG McDonald's authority as a prosecutor far extends beyond "consulting services" as the term typically invokes. Indeed, for all intents and purposes, he has the same authority as any other full-time Assistant Attorney General employed with the OAG. He is a prosecutor and, therefore, any

waiver of a conflict by a client in a criminal matter must be made after full and knowing disclosure.

### 2. The requirements of Guam Public Law No. 36-107, Chapter 11 Section 18, authorizing the hiring of independent contractors for the OAG have not been met here.

SAAG McDonald also argued in the Motion Hearing that his representation as a SAAG is permitted under this law, because Guam Public Law 36-107 allows the Office of the Attorney General to hire independent contractors when impracticable or impossible. Mot. Hrg. at 10:26:25 AM – 10:27:00 AM. Under this law:

**Guam Public Law No. 36-107, Chapter 11 Section 18. Contracts.**

Positions in the classified and unclassified service of the government of Guam shall not be filled pursuant to a contractual arrangement, except as provided in this Section, for Fiscal Year 2023.

[Subsections (a) & (b) (omitted)]

(c)     The Office of the Attorney General, the Public Defender Service Corporation, and the Alternate Public Defender are authorized to contract with attorneys as independent contractors to provide services in areas in which it is impracticable or impossible for the office to proceed. Such contracts shall be in accordance with the procurement laws of Guam. No such independent contractor hired pursuant to this Section may receive from the government of Guam any remuneration in any form other than in payment for the position into which such person is hired. The Office of the Attorney General, the Executive Director of the Public Defender Service Corporation, and the Executive Director of the Alternate Public Defender shall file a copy of every such contract with the Chief Procurement Officer and the Director of Administration together *with a written certification stating why it is impracticable to handle the matter within the office as otherwise constituted*.

(emphasis added). No written certification has been provided to the Court establishing compliance with the requirements of the P.L. 36-107. Without the written certification stating why it is impracticable to handle the matter within the Office of the Attorney General, the

Court finds that the SAAG's services are not impracticable or impossible for the existing prosecutors of the Office of the Attorney General to execute.

Moreover, several AAGs have appeared in this case prior to SAAG McDonald's entry of appearance including AAG Kristine Borja, AAG Charles Kinnunen, AAG Leah Diaz-Aguon, AAG Matthew Shuck, and AAG Ed Han, during the period of May 11, 2023, to September 6, 2023; therefore, it does not appear that it is "impracticable or impossible for the office to proceed" without SAAG McDonald.

### 3. The SAAG's engagement is not prohibited by Title 5 § 30113.

Notwithstanding the Court's ruling herein, the Court rejects Defendant's argument that SAAG McDonald is barred from engaging in outside employment under § 30113. Outside Employment Regulated. *Def. Mot.* This statute states that:

**Title 5 § 30113. Outside Employment Regulated.**

Neither the Attorney General nor any person employed in the Department of Law shall engage in outside employment which shall conflict with his duties within the Department of Law. Attorneys employed as classified or unclassified attorneys in the Department of Law, or any attorney employed as classified or unclassified attorneys by any government of Guam agency, department or instrumentality, including semi-autonomous or autonomous agencies or branches of the government of Guam shall not engage in the practice of law outside of the Department of Law, or the agency, department, instrumentality or branch of the government of Guam, unless the attorney is exempted from this restriction because the attorney is a member of the U.S. military armed formed or U.S. Coast Guard serving actively, or serving in the reserves, or state or territorial guard; or unless the attorney is exempted from this restriction because the attorney is performing pro bono service, or teaching or training that is approved by the Attorney General or by the head or director of the agency, department, instrumentality or branch of the government of Guam.

As mentioned earlier, the SAAG indicated that he is also representing clients in two criminal, pre-trial stage matters with the Firm. McDonald's outside SAAG employment, while practicing with the Firm, does not constitute a violation of the statute, because this statute only

applies to attorneys with the Department of Law and attorneys for the Government of Guam. While he is not an attorney with the Department of Law, the outside employment at issue here is his SAAG engagement as a practicing private defense attorney, not his court-appointed and retained clients with the Firm – all of which predate his SAAG engagement. Therefore, the SAAG did not violate § 30113 by his SAAG engagement.

## IV. CONCLUSION

The Court finds that the dual and contradictory roles that SAAG McDonald is required to serve for the People and for a defendant in a criminal case will eventually result in a difference of interest that will compromise and materially interfere in McDonald's independent professional judgment in *both* of his capacities as prosecutor for the People of Guam and counsel for indigent and retained defendants in criminal cases. The Court finds further that the SAAG is unable to establish an exception permitting representation of both the People and clients in criminal cases under Rule 1.7(b).

Moreover, even if the Court were to find that there was no conflict of interest precluding McDonald's continued prosecution of this matter as SAAG, the requirements of Guam Public Law No. 36-107, Chapter 11, Section 18 have not been satisfied. Therefore, his appointment is in violation of this law.

Finally, the Court finds that Title 5 § 30113. Outside Employment Regulated does not apply in this case to prohibit McDonald's SAAG designation.

//

//

//

//

For the reasons set forth herein, the Court hereby **GRANTS** the Defendant's Motion to Disqualify. The Court shall issue, under separate cover, an **ASSERTED** Criminal Trial Scheduling Order, as the Defendant has asserted her right to speedy trial in this matter.

SO ORDERED this 2nd day of April, 2024.

**HONORABLE MARIA T. CENZON**
Judge, Superior Court of Guam